RONALD L. AND DOROTHY J. SCHEUERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scheuerman v. Commissioner
Docket No. 13730-81.
United States Tax Court
T.C. Memo 1984-160; 1984 Tax Ct. Memo LEXIS 508; 47 T.C.M. (CCH) 1394; T.C.M. (RIA) 84160; April 2, 1984. *508 For 1972, 1973, and 1974, petitioner-husband failed to file returns for partnership until after audit started; failed to report on individual returns his part of partnership net income but claimed during same years losses from another partnership; paid personal expenses from partnership account; and attempted to hinder audit by making false statements to agents and asking bank employee to withhold information from agents. Held, individual returns for 1972, 1973, and 1974 were fraudulent and addition to tax under section 6653(b) sustained. Held,further, assessment for 1972, 1973, and 1974 not barred because of fraud, section 6501(c)(1); assessment for 1977 not barred because notice issued within three year statute, section 6501(a); and 1975 and 1976 open for assessment under Form 872-A even though respondent had separated 872-A from petitioner's covering letter where letter not contrary to any provision of the Form, section 6501(c)(4). Cary v. Commissioner,48 T.C. 754 (1967) distinguished. C. Wayne Morris, for the petitioners. Thomas R. Thomas, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined that there are deficiencies *509 in income tax and additions to tax due from petitioners as follows: Additions to Tax
Year
Deficiency
Under Sec. 6653(b) [1]
1972
$1,793.90
$896.95
1973
1,870.15
935.08
1974
1,546.63
1,274.32
1975
1,284.02
1976
696.97
1977
168.98
The respondent has conceded that petitioner, Dorothy J. Scheuerman, is not liable for the additions to tax under section 6653(b) and the parties have stipulated the correct amount of the deficiencies. The issues remaining for decision are: (1) whether the additions to tax for fraud as provided by section 6653(b) are due from petitioner, Ronald L. Scheuerman, for the years 1972, 1973, and 1974; and (2) whether the assessment of the deficiencies and additions to the tax for any one or all of the years 1972 through 1977 is barred by the statute of limitations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Ronald L. Scheuerman (hereinafter petitioner) and Dorothy J. Scheuerman, husband and wife, resided in Huntsville, Alabama *510 when they filed their petition in this case. They filed joint income tax returns for the years in issue with the Internal Revenue Service Center in Atlanta, Georgia. (1) Additions to Tax
Petitioner is an electrical engineer. During the years 1972 through 1977 he was employed full time as such by the Army, at Redstone Arsenal. He was also a 50 percent partner in RL&T Electric (hereinafter RL&T), a partnership that he had formed with a friend to do heating, air conditioning, and refrigeration repairs. He and his partner operated the repair business in the evenings and on weekends. RL&T was successful and became virtually a full time second job for petitioner. He and his partner opened a checking account in the name of RL&T at People's National Bank of Huntsville. Partnership receipts were deposited in this account and partnership expenses were paid from the account by check. During 1972, 1973, and 1974, RL&T also paid personal expenses of petitioner with checks drawn on this account in the total respective amounts of $745.22, $3,813.80, and $2,893.42. During 1972 part of the cost of a swimming pool constructed at the residence of petitioner was also paid with checks drawn *511 on the RL&T account. The records of RL&T accurately reflected the receipts and expenditures of the partnership. It had net income for the years 1972, 1973, and 1974 of $7,497.48, $8,213.82, and $10,542.97, respectively. Petitioner did not report any of the partnership income on the joint returns for these years. In fact, partnership returns were not filed for 1972 through 1974 until after the Internal Revenue Service began auditing the individual returns in January of 1976. Petitioner realized that the partnership had gross income of between $8,000 and $10,000 during 1972, its first year of operation. At the end of the year he contacted an accountant to prepare the partnership return but felt that the fee quoted by the accountant was too high and decided to prepare the partnership return himself. Petitioner testified that when he attempted to prepare the partnership return he found that he did not understand depreciation but believed that the partnership expenses including depreciation were greater than its income so in his words he concluded that "to heck with the whole matter" of filing partnership returns and reporting partnership income on the joint returns. Petitioner, *512 however, did report a loss from another partnership known as Alarky on the individual returns for 1972, 1973, and 1974. The examination of petitioner's returns began as the result of the audit of another taxpayer who told the auditing agent that he had bought parts from RL&T. When a revenue agent initially contacted petitioner by telephone, he informed the agent that partnership returns for RL&T had been filed for 1973 and 1974. In a subsequent interview, he admitted that the returns had not been filed and that he had not reported income from RL&T. During the audit, petitioner told respondent's agent that all retained copies of deposit tickets on the RL&T account had been destroyed. As a result respondent had to resort to a detailed analysis of the account in order to verify that the receipts were accurately reflected on the records of RL&T. During this analysis Karen Walker, a bookkeeper for the bank, contacted petitioner to obtain numbers for deposit tickets to aid her in finding certain information requested by respondent. Petitioner gave Ms. Walker the requested numbers but asked her not to tell the Internal Revenue Service how she got the numbers because he had told the *513 revenue agent that the tickets were destroyed. (2) Statute of Limitations
Petitioners' joint income tax returns for the years in issue were filed on the following dates: Return
Date Filed
1972
04/15/73
1973
04/15/74
1974
04/15/75
1975
06/18/76
1976
04/15/77
1977
04/15/78
The notice of deficiency was mailed by the respondent to the petitioners on March 23, 1981. The parties entered into several agreements (Forms 872) extending to specific dates the period of limitations for assessment of deficiencies for some of the years in issue. On March 30, 1979, they agreed to extend the period for 1972 and 1975 until December 31, 1979.On December 5, 1979, they agreed to extend the period for 1972, 1973, 1975, and 1976 until June 30, 1980. On April 24, 1980, the parties entered into a "Special Consent to Extend the Time to Assess Tax" (Form 872-A). This agreement extended the period of assessment for 1972, 1973, 1975, and 1976 to a date 90 days after (1) the Internal Revenue Service mailed a notice of termination of the agreement to the petitioners, (2) the Internal Revenue Service received a notice of termination of the agreement from the petitioners, or (3) the Internal Revenue Service mailed a notice *514 of deficiency to the petitioners. The agreement on Form 872-A was never terminated by either party. Petitioners attached a letter to the Form 872-A which stated the following: The attached special consent forms are signed under protest due to the taxpayers understanding that the statutes of limitations has expired for the listed tax periods and therefore there is no legal basis for the IRS request. The only other option, as explained to the taxpayers, is the issuant of a formal notice of tax deficiency, in which case the taxpayer has 90 days to file a petition with the tax court. This option is undesirable to the taxpayers, since the previous expensive and time consuming court trial on this matter left no doubt in the taxpayers mind that a large amount of the taxpayers financial solvency is lost in this type process. The following exception is noted for the attached special consent forms and shall remain a part of the subject forms until the agreement expiration date: The statement contained in publication 1035 (6-79), to wit "(Generally, the flexibly expiration provision, if used, would only be used in cases where the taxpayer has agreen to all of the proposed adjustments.)" *515 is not applicable for obvious reasons. [Reproduced literally.] The above letter was separated from the executed Form 872-A by the respondent. OPINION (1) Additions to Tax
Section 6653(b) provides that, if any part of any underpayment is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Fraud, within the meaning of section 6653(b), is an intentional wrongdoing with the specific intent of evading a tax believed to be owed. ; . Whether fraud exists with respect to an underpayment of tax is a question of fact, and the burden is on respondent to show the existence of such fraud by clear and convincing evidence. Sec. 7454(a); ; Rule 142(b). [2] The answer to this question must be determined from an examination of the entire record. . Since direct evidence of fraud is seldom available, the required intent may be shown by circumstantial evidence and reasonable inferences drawn from the proven facts. ; *516 ; , affd. per order (8th Cir. May 2, 1978). The respondent has clearly and convincingly proven, and we have found, that for and during the years 1972, 1973, and 1974: (1) Ronald L. Scheuerman knew that partnership income was taxable and had the knowledge and the ability necessary to properly report partnership activities on his individual returns by filing returns on which he properly reported such activities [see , affd. , cert. denied ; , affg. a Memorandum Opinion of this Court]; (2) He failed, however, in each of the aforesaid years to report a substantial amount of taxable income from RL&T which he obviously knew to be taxable [see , affg. a Memorandum Opinion of this Court]; [3] (3) He failed to file timely partnership returns for RL&T for said years [see ; *517 (4) He used checks on the partnership account to pay personal expenses [see , affd. ; [4] and (5) He hindered the investigation of the Internal Revenue Service by falsely telling one of respondent's agents that returns had been filed by the partnership for 1973 and 1974, by telling another agent that the deposit tickets of the partnership had been destroyed, and by requesting the bookkeeper of the bank to withhold information from the Internal Revenue Service [see , cert. denied ; . From an examination of the record as a whole, we are convinced, therefore, that Ronald L. Scheuerman fraudulently intended to evade and defeat the payment of some part of the deficiency in tax due from him for each of the years 1972, 1973, and 1974. Consequently, the petitioner is liable for the additions to tax provided by section 6653(b) for such years.
(2) Statute of Limitations
We have *518 found that the individual returns for the years 1972, 1973, and 1974 were fraudulently filed by the petitioner with intent to evade tax. Therefore, assessment for these years may be made at any time pursuant to section 6501(c)(1). , affd. , cert. denied . We have found that the return for 1977 was filed on April 15, 1978, and that the respondent mailed the notice of deficiency to the petitioners on March 23, 1981. Hence the assessment for 1977 is not barred because the notice of deficiency was mailed within the three-year statute of limitations provided by section 6501(a). The timeliness of the notice of deficiency for the years 1975 and 1976 depends upon the validity of the "Special Consent to Extend the Time to Assess Tax" (Form 872-A) that the parties executed on April 24, 1980 because section 6501(c)(4) provides that the period for assessment will not expire until a date that the taxpayer and the Secretary of the Treasury or his delegate agree upon in writing if such agreement is made before the period is due to expire. [5] The parties entered into such an agreement when they executed Form *519 872-A. However, petitioners argue that the agreement is invalid because respondent physically separated the Form 872-A from their covering letter. [6] Petitioners assert that this was a unilateral alteration of the form by respondent which renders the consent invalid. [7]
We have held that a unilateral alteration of a consent form by the Commissioner without the taxpayer's consent will operate to invalidate the taxpayer's agreement to extend the period for assessment. . In Cary, the Court invalidated a Form 872 on which respondent changed the tax year after the taxpayer had signed it without notifying the taxpayer. Furthermore, statements made *520 in a letter accompanying a Form 872-A may be considered conditions of the waiver and thus part of the agreement or form. See . Therefore, the respondent's removal of the letter could constitute an alteration of the consent form if the letter contained statements which are contrary to provisions set forth in the form.
The facts of Cary, however, are distinguishable from this case. Petitioners' letter merely states (1) that petitioners believed the statute of limitations had expired at the time they were executing the Form 872-A; (2) that they signed the Form 872-A to postpone the issuance of a notice of deficiency; and (3) that they did not agree with the proposed deficiencies. The statements in the letter are not contrary to nor do they change any provision of the Form 872-A. In our view the letter simply sets forth the position of petitioners and does not constitute a statement of conditions to the Form 872-A. Therefore, respondent's act of physically removing the letter from the Form 872-A did not invalidate the agreement to extend the assessment period for 1975 and 1976 and the notice of deficiency was also timely with *521 respect to these years. In summation we conclude that the assessment of the deficiencies and additions to tax for the years 1972 through 1977 are not barred by the statute of limitations. To reflect the foregoing, as well as concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue, unless otherwise indicated.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
3. See also . ↩
4. See also ; ↩
5. We have found that prior to executing the Form 872-A, the parties had entered into agreements (Forms 872) extending the period for assessment in 1975 and 1976 to June 30, 1980. See page 5, supra.↩
6. Petitioners' letter is set forth at pages 6 and 7, supra.↩
7. Petitioners also argue that the agreement is invalid because they signed it under duress. This argument was raised for the first time in petitioners' brief and will not be addressed herein except to note that the record contains no evidence of duress.↩