PEGGY J. KRONISH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32574-84.　　　Filed April 13, 1988.

*Michael E. Greene*, for the petitioner.

*Steven Z. Ettinger* and *Elizabeth M. Fasciana*, for the respondent.

WELLS, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1978 in the amount of $5,532. The issue presented for decision is whether the period for assessing a deficiency against petitioner for her 1978 taxable year expired prior to the date on which respondent issued a statutory notice of deficiency with respect to such taxable year. The parties agree that our determination with respect to this issue will be dispositive of this case, since petitioner does not challenge respondent's substantive grounds for disallowing a $20,000 deduction claimed by petitioner.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner resided in New York, New York, at the time she filed her petition in this case. Petitioner was an office manager of a law firm.

In 1978, petitioner was a licensee of Churchill Research & Development Corp. (Churchill), with respect to the sale and distribution of a "birth control detector." During that same year, petitioner delivered to Churchill a $20,000 nonrecourse promissory note, which was signed by her.

Petitioner filed her Federal income tax return for the taxable year 1978 in a timely manner. On a Schedule C attached to that return, petitioner indicated that she was in the business of distributing a birth control detector, and she reported a $20,000 net loss from that business. The loss was attributable to a deduction claimed by petitioner on the

Schedule C for a $20,000 distributorship fee expense; this expense was reported to reflect petitioner's delivery of the $20,000 nonrecourse promissory note to Churchill.

On or about October 20, 1981, the District Director of Internal Revenue, Newark, New Jersey (respondent's Newark Office), notified the District Director of Internal Revenue, New York, New York (respondent's Manhattan Office), that it was conducting an examination of Churchill's returns for taxable years 1978 and 1979, and that there was a relationship between Churchill and petitioner. Respondent's Newark Office used a Form 918-A, entitled "Notice of Examination of Fiduciary, Partnership, or Small Business Corporation Return," to convey that notice. On the top of the form appeared the handwritten notation "Special Use— Agency Relationship." The Form 918-A listed petitioner as "A distributee/shareholder of the income of the above [Churchill], listed in your district."

A form letter dated November 30, 1981, on which petitioner's name was handwritten, was sent by respondent's Manhattan Office to petitioner. The letter first stated, "The above-named entity(s) return [i.e., Churchill's return] is under audit consideration, certain adjustments may be proposed to the entity(s) return which may affect your individual tax return for the Year(s) 1978." The letter further stated, "In order to allow time for adequate consideration of your case in conjunction with the audit of the entity(s), we request that you sign the enclosed consent, Form 872/872A." Finally, the letter requested that petitioner "Please read the instructions on Form 872/872A, then sign, date and return all copies of the Form within 10 days in the enclosed envelope." Enclosed with the November 1981 letter was a Form 872-A, entitled "Special Consent to Extend the Time to Assess Tax," that contained no restrictions as to the time period for which it would be effective or as to the matters that it would cover.

Mr. Barry C. Feldman, an attorney, was contacted by petitioner sometime during late 1982 or early 1982 with regard to the November 1981 letter and the Form 872-A. Mr. Feldman later determined from Churchill's tax return that Churchill was an electing corporation under subchapter

S of the Internal Revenue Code, and that petitioner was not one of Churchill's shareholders.

Mr. Feldman then called the telephone number listed on the November 1981 letter and spoke with an employee of respondent's Manhattan Office about the letter and the Form 872-A.[1] Based upon his conversation with that employee, Mr. Feldman thought that respondent's Manhattan Office would be sending petitioner a consent to extend the period of limitations that was limited in duration and to "the issues involving adjustments to the entity Churchill Research." Mr. Feldman then made a telephone call to petitioner during which he advised her that in the very near future, she would be receiving a consent form restricted in duration and to adjustments flowing from adjustments to Churchill's income tax return. Mr. Feldman also told petitioner during their telephone conversation that the form would be mailed directly to petitioner because petitioner had not filed a power of attorney with respondent authorizing Mr. Feldman to act on her behalf and authorizing respondent to communicate directly with Mr. Feldman concerning the Churchill matter.

As of mid-February 1982, petitioner had not received the consent form. Mr. Feldman told petitioner that he soon would be going on vacation. Mr. Feldman further told petitioner that if petitioner received the consent form while Mr. Feldman was on vacation, and petitioner was required to sign and return the form before he returned from his vacation, petitioner should do the following: (1) Make sure the form was "restricted to a date certain" and "limited to adjustment from Churchill Research," and (2) if the form was restricted in such manner, she should sign the form and return it to respondent.

By a form letter dated February 24, 1982, respondent's Manhattan Office sent a Form 872, entitled "Consent to Extend the Time to Assess Tax," with attached restrictions, to petitioner. The February 1982 letter was identical in all material respects to the November 1981 letter.[2] The

---

[1]Mr. Feldman has not been designated as petitioner's authorized representative as of this time.

[2]The February 1982 letter contained language that was identical to the language we quoted from the November 1981 letter, *supra.*

first page of the Form 872 stated, in pertinent part, as follows:

KRONISH, Peggy J
_____

(Name(s))

taxpayer(s) of          123 East 37th Street New York, N.Y. 10016
_____

(Number, Street, City or Town, State, ZIP Code)

and the District Director of Internal Revenue or Regional Director of Appeals consent and agree to the following:

(1) The amount of any Federal ____Income____ tax due on any

(Kind of tax)

return(s) made by or for the above taxpayer(s) for the period(s) ended _____December 31, 1978_____ may be assessed at any time on or before _____June 30, 1983_____. However, if a notice of deficiency

(Expiration date)

in tax for any such period(s) is sent to the taxpayer(s) on or before that date, then the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days.

\*        \*        \*        \*        \*        \*        \*

*Restriction Attached*

[The underlined language on the first page of the Form 872 was inserted by the preparer of the document.]

The restrictions were contained on a separate page attached to the Form 872, which stated, in pertinent part, as follows:

The amount of any deficiency assessment is to be limited to that resulting from: (1) any carryover or continuing tax effects caused by adjustments to any prior tax return; (2) any adjustments to your share of any item of income, gain, loss, deduction, credit and/or other distributions from entity(ies) known as:

[Original left blank]

(3) any adjustments which affect your basis in the aforementioned entity(ies); (4) any adjustments to the return(s) of the aforementioned entity(ies) which also affect your return; (5) any adjustment(s) to your return caused by determination, if any, of the Commissioner based on acts, whether of commission or omission, taken by you with reference to an interest(s) in the entity(ies); and/or acts, whether of commission or omission, taken by an individual or organization dealing with the entity(ies); and/or the act of curing any defect with respect to an interest(s) in the entity(ies); (6) Ordinary losses from *Churchill Research* operations claimed on Schedule C (Form 1040), and investment credits arising from *Churchill Research* operations claimed on Form 3468 (Form 1040), and any other item reported on form 1040 which relates to

[original left blank] operations; (7) and, any consequential changes to other items based on such adjustments.

[The underlined language on the second page of the Form 872 either was inserted by the preparer of the document or represents a space left blank by the preparer.]

At the time petitioner received the February 1982 letter and the Form 872 enclosed with that letter, Mr. Feldman was on vacation. Petitioner therefore attempted to follow Mr. Feldman's instructions, and examined the Form 872 to ascertain whether restrictions were contained in the consent form. On or about March 9, 1982, petitioner ascertained that the duration of the extension was limited to a date certain and that the restrictions referred to Churchill. Petitioner therefore signed the Form 872 and the separate page containing the restrictions, as well as copies of those documents, and returned the documents, as well as the copies of those documents, to the Internal Revenue Service (Service).

On or about March 18, 1982, the Form 872 and the attached page of restrictions were signed by a representative of respondent's Manhattan Office (hereinafter the Form 872 enclosed with the February 1982 letter sometimes is referred to as the first consent form).

When Mr. Feldman returned from vacation, he was advised by petitioner that she received a restricted consent form and copies of the form from the Service, and that she signed the original and the copies and sent them back to the Service. Mr. Feldman asked petitioner to give him a copy of the consent form when she received a copy back from the Service. It was not until late 1982 that petitioner sent a copy of the first consent form to Mr. Feldman, and Mr. Feldman reviewed it. He then told petitioner that the restrictions were not consistent with restrictions to which he had agreed during his telephone conversation with respondent's Manhattan Office.

By a form letter dated January 15, 1983, respondent's Manhattan Office requested a further extension of the period of limitations on assessment with respect to petitioner's taxable year 1978. The letter was identical in all material respects to the November 1981 and February 1982 letters. Enclosed with the letter was a Form 872, with

attached restrictions, that was identical in all material respects to the first consent form, except that the Form 872 enclosed with the January 1983 letter stated that the amount of any Federal income tax due with respect to petitioner's taxable year 1978 "may be assessed any time on or before *June 30, 1984* (hereinafter the Form 872 enclosed with the January 1983 letter is referred to as the 'second consent form')." (Emphasis supplied.)

Respondent's Manhattan Office did not receive an immediate response from petitioner concerning the January 1983 letter and the second consent form. Respondent's Manhattan Office therefore sent petitioner a letter dated February 2, 1983, warning petitioner that if she did not contact respondent's Manhattan Office "within the next 10 days," the office would "have no alternative but to forward [petitioner's] case for issuance of a Statutory Notice of Deficiency." Mr. Feldman then made a telephone call to respondent's Manhattan Office to complain that the restrictions on the first consent form and the second consent form were not in conformance with the restrictions to which Mr. Feldman agreed during his prior telephone conversation with the respondent's Manhattan Office. Mr. Feldman was advised by respondent's Manhattan Office, however, that if the second consent form was not signed, a statutory notice of deficiency would be issued. On or about February 7, 1983, Mr. Feldman, by then properly designated as petitioner's authorized representative, signed the second consent form, which contained the June 30, 1984, extension date. He also signed the separate page containing the restrictions.

The second consent form and the attached page of restrictions were signed by a representative of respondent's Manhattan Office on or about February 11, 1983.

A form letter dated March 13, 1984, was sent by respondent's Manhattan Office to petitioner, and it requested that petitioner sign yet another Form 872 to further extend the period of limitations on assessment with respect to petitioner's taxable year 1978. The March 1984 letter was identical in all material respects to the letters previously sent to petitioner, except that its blank spaces were not filled in to refer to Churchill or to petitioner's

taxable year 1978.[3]

Twice during April 1984, a clerk in respondent's Manhattan Office contacted Mr. Feldman to discuss a further extension of the period of limitations on assessment, as was sought by the March 1984 letter. During conversations with the clerk, Mr. Feldman expressed his "displeasure" with the Service and advised the clerk that the various consent forms contained different restrictions than the ones to which Mr. Feldman had agreed. Mr. Feldman further advised the clerk that he did not think the period of limitations on assessment was still open for petitioner's taxable year 1978, and that he declined to sign another consent form. Last, Mr. Feldman advised the clerk that if no one in a position of authority would discuss the issue with him, a statutory notice of deficiency should be issued so that the matter could be resolved in court.

On June 26, 1984, respondent issued a statutory notice of deficiency in which he determined the aforementioned deficiency in petitioner's income tax for her taxable year 1978. Respondent's determination was based upon his disallowance of the deduction claimed by petitioner for the $20,000 distributorship fee expense, and was not based upon any adjustments to Churchill's tax return.

## OPINION

The issue in the instant case is whether the period for assessing a deficiency against petitioner for her 1978 taxable year expired prior to June 26, 1984, the date on which respondent issued a statutory notice of deficiency with respect to such taxable year.

Income taxes generally must "be assessed within 3 years after the return was filed." Sec. 6501(a).[4] Taxpayers and respondent, however, may consent in writing to extend the

---

[3]The parties have stipulated that the letter was sent with respect to petitioner's taxable year 1978.

[4]Sec. 6501(a) provides as follows:

SEC. 6501(a). GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

3-year period of limitations on assessment. Sec. 6501(c)(4).[5]

In the instant case, the parties signed two consent forms. The first consent form purported to extend the period of limitations on assessment to June 30, 1983. The second consent form purported to extend the period of limitations to June 30, 1984, which was subsequent to the date on which respondent issued his statutory notice of deficiency.

Petitioner contends, however, that the first consent form should not be given effect by this Court, and offers two alternative bases for her contention: (1) There was no mutual assent to the terms contained in the first consent form; or (2) respondent should be equitably estopped from relying upon the first consent form.[6] According to petitioner, if this Court does not give effect to the first consent form, the second consent form does not operate to extend the period of limitations on assessment to June 30, 1984, since it would have been signed on behalf of petitioner after the period of limitations on assessment expired.[7] Thus, according to petitioner, the statutory notice of deficiency was issued after the period of limitations expired with respect to petitioner's taxable year 1978.

We analyze each of petitioner's contentions separately. We note at the outset, however, that petitioner bears both the burden of going forward and the ultimate burden of persuasion in the instant case. See *Adler v. Commissioner*, 85 T.C. 535, 540-541 (1985) (addressing situation where taxpayer pleads the bar of the period of limitations on

---

[5]Sec. 6501(c)(4) provides as follows:

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

[6]In her supplemental reply brief, petitioner raised a third basis for her contention—she argued that she made a unilateral mistake of fact when she signed the first consent form, and that such mistake should cause the form to be set aside by this Court. We refuse to consider petitioner's unilateral mistake argument, since the argument goes beyond the scope of our order granting petitioner's motion to file supplemental reply brief. Our order only granted petitioner's motion so that petitioner could address our Memorandum Sur Order vacating *Schwotzer v. Commissioner*, T.C. Memo. 1986-161. Petitioner went beyond the issues addressed in our Memorandum Sur Order vacating *Schwotzer*, and raised the unilateral mistake argument.

[7]See sec. 6501(a); *Molner v. Commissioner*, a Memorandum Opinion of this Court dated Mar. 14, 1944 (3 T.C.M. 227, 13 P-H Memo T.C. par. 44,078).

assessment and respondent introduces into evidence a consent form that is valid on its face); Rules 39, 142(a).

## Mutual Assent

A consent to extend the period of limitations on assessment is not a contract; it, essentially, is a unilateral waiver of a defense by the taxpayer. *Stange v. United States,* 282 U.S. 270 (1931); *Piarulle v. Commissioner,* 80 T.C. 1035, 1042 (1983); *Tallal v. Commissioner,* 77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). "Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension." *Piarulle v. Commissioner, supra* at 1042.

Petitioner contends that there was no "agreement" when she signed the first consent form because respondent caused petitioner to believe that the form would cover a different type of adjustment than it, in fact, covered. According to petitioner, she was led to believe that the restrictions attached to the first consent form only would keep the period of limitations open with respect to adjustments to her return that were based upon adjustments to Churchill's return (these adjustments hereinafter are referred to as the Churchill flowthrough items). Petitioner claims that she signed the first consent form only because she thought it was restricted to Churchill flowthrough items. She contends that Mr. Feldman would not have let her sign it if he had known that it would cover adjustments to the Schedule C attached to her 1978 return.

Respondent counters by arguing that petitioner assented to the terms of the first consent form, including its attached restrictions, when she signed it. We agree with respondent.

It is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not the parties' secret intentions, that determines whether the parties have made an agreement. 1 S. Williston, Contracts, secs. 22 and 35 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979); *Pimpinello v. Swift & Co.,* 253 N.Y. 159, 162-163, 170 N.E. 530, 531 (1930). In the instant case, petitioner intentionally signed the first consent form, and thereby manifested her assent to terms contained in that form.

Petitioner relies upon *Piarulle v. Commissioner*, 80 T.C. 1035 (1983), and *Cary v. Commissioner*, 48 T.C. 754 (1967), to support her position that she did not assent to the first consent form signed by her.[8] In those cases, we held that consent forms signed by the taxpayers were invalid because the forms were altered by respondent after the taxpayers signed them. The consent forms in the instant case, however, were not altered by respondent after petitioner signed them; *Piarulle* and *Cary* therefore do not support petitioner's position.

Based upon the foregoing, we find that mutual assent to the first consent form was established by the uncontroverted showing of the parties' signatures thereon. In other words, the parties objectively manifested their mutual assent to the terms contained in the first consent form, as evidenced by each party's overt act of signing it.[9] Therefore, we hold that the first consent form is valid to extend the period of limitations to June 30, 1983. Since the

---

[8]Petitioner also cited *Schwotzer v. Commissioner*, T.C. Memo. 1986-161, and *Sheuerman v. Commissioner*, T.C. Memo. 1984-160, in support of her position that she did not assent to the first consent form. In *Schwotzer*, we held that a consent form was invalid because the taxpayer had inserted restrictive language on the back of the form without respondent's knowledge, even though (1) respondent signed the form *after* the alteration was made, and (2) the only space on the form in which the taxpayer could insert restrictive language was on the back of the form. We based our holding in *Schwotzer* on the failure of respondent to assent to the terms of the consent form. *Schwotzer*, however, was vacated by order dated July 17, 1986, and we therefore need not discuss that case any further.

In *Sheuerman*, we indicated that "statements made in a letter accompanying a Form 872-A may be considered conditions of the waiver and thus part of the agreement or form." *Sheuerman v. Commissioner*, 47 T.C.M. 1394, 1398, 53 P-H Memo T.C. par. 84-160, at 84,563 (1984). Petitioner has not made clear how *Sheuerman* supports her position in the instant case. Petitioner apparently is arguing that based upon the February 1982 letter, she believed that the first consent form was restricted in the manner desired by Mr. Feldman. We do not find such belief to have been reasonable. As we indicate more fully, *infra*, in response to petitioner's equitable estoppel argument, the February 1982 letter does not purport to describe or limit the scope of the first consent form. Moreover, regardless of her belief, as we already have indicated, we look at objective manifestations of assent to determine whether an agreement has been entered into by the parties.

[9]Only Mr. Feldman testified with regard to petitioner's attempt to read the first consent form and ascertain whether the restrictions limited the consent to Churchill flowthrough items. There was no foundation laid for that testimony. Presumably Mr. Feldman's knowledge was based upon hearsay (i.e., petitioner's statements to Mr. Feldman). Due to respondent's failure to object at trial, Mr. Feldman's testimony was admitted into evidence without any restrictions on its use. However, that testimony, as well as Mr. Feldman's testimony concerning the instructions he left with petitioner when he went on vacation, does not satisfy us that petitioner completely understood Mr. Feldman's instructions. It has not been established to our satisfaction that at the time petitioner signed the first consent form, she only intended to sign a consent form that was limited in scope to Churchill flowthrough items. Nevertheless, *since it is petitioner's objective manifestations that control the issue of mutual assent in the instant case*, petitioner's subjective intent is not relevant to that issue.

first consent form is valid, the second consent form, which stated that the period of limitations on assessment was extended to June 30, 1984, also is valid.

## Estoppel

Petitioner's next contention is that even if she assented to the first consent form, respondent nevertheless is equitably estopped from relying upon the first consent form and the second consent form. Respondent argues that petitioner has not shown the elements necessary to invoke the doctrine of equitable estoppel. We agree with respondent.

"[T]he doctrine of equitable estoppel is applied against the Government 'with the utmost caution and restraint.' " *Boulez v. Commissioner*, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987). There are several conditions that must be satisfied before the doctrine is applied. *Lignos v. United States*, 439 F.2d 1365, 1368 (2d Cir. 1971); *Boulez v. Commissioner, supra* at 215; *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617-618 (1977), and cases cited therein. One of the conditions that must be satisfied is the existence of a false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine. *Lignos v. United States, supra* at 1368; *Estate of Emerson v. Commissioner, supra* at 617-618.[10]

Petitioner first contends that an employee of respondent's Manhattan Office made a false representation to petitioner's counsel, Mr. Feldman. Petitioner's argument is based upon a telephone conversation between Mr. Feldman and an employee of respondent's Manhattan Office. During that phone call, the employee allegedly represented to Mr. Feldman that the only issue under consideration with respect to petitioner's taxable year 1978 involved Churchill

---

[10]Other conditions that we have stated must be satisfied are as follows: (1) "[T]he error must be in a statement of fact and not in an opinion or a statement of law" (*Estate of Emerson v. Commissioner*, 67 T.C. 612, 618 (1977)); (2) "the person claiming the benefits of estoppel must be ignorant of the true facts" (*Estate of Emerson v. Commissioner, supra*); (3) the person claiming the benefits of estoppel must reasonably rely on the acts or statements of the one against whom estoppel is claimed (*Hudock v. Commissioner*, 65 T.C. 351, 363 (1975)); and (4) the person claiming the benefits of estoppel "must be adversely affected by the acts or statements of the [one] against whom estoppel is claimed" (*Estate of Emerson v. Commissioner, supra*).

flowthrough items, and that it would not be a problem to limit the scope of a Form 872 to those items.

However, petitioner's assertion about what Mr. Feldman was told by an employee of respondent's Manhattan Office was never established in the record by the introduction of admissible evidence. Moreover, petitioner's bare assertion on brief, standing without admissible evidence, cannot serve to establish that there was a false representation made by the employee of respondent's Manhattan Office.[11] Rule 143(b).

Petitioner next contends that respondent's February 1982 letter, enclosing the first consent form, either (1) contained a false representation regarding the contents of the first consent form, or (2) constituted a misleading silence because that letter did not state explicitly that the first consent form, enclosed with that letter, did not conform with the terms to which Mr. Feldman agreed during his first telephone conversation with an employee of the Manhattan Office.

First, it is clear that the February 1982 letter did not contain a false representation concerning the scope of the restrictions contained in the first consent form. That letter did state that "The above-named entity(s) return [i.e., Churchill's return] is under audit consideration," and that "certain adjustments may be proposed to the entity(s) return which may affect your individual return for Year(s) 1978." The letter also stated, "In order to allow time for adequate consideration of your case in conjunction with the audit of the entity(s) [i.e., Churchill], we request that you sign the enclosed consent, Form 872/872A." Although this quoted language does suggest that respondent's Manhattan Office was concerned about Churchill flowthrough items,[12]

---

[11]Petitioner argues that since respondent failed to call the employee of respondent's Manhattan Office as a witness to testify in the trial of the instant case, we should infer that such employee's testimony would have been unfavorable to respondent. Petitioner cites *Witchita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947), in support of her argument. However, petitioner's reliance on *Witchita* is misplaced since it is petitioner who bears the burden of proof. See *Blum v. Commissioner*, 59 T.C. 436, 440-441 (1972); *Pollack v. Commissioner*, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968). See also *Adler v. Commissioner*, 85 T.C. 535, 540-541 (1985).

Moreover, petitioner has not even presented us with any evidence as to the name of the employee; presumably petitioner also did not apprise respondent of the employee's name.

[12]In fact, respondent was concerned about Schedule C deductions, not Churchill flowthrough items, as evidenced by the testimony of respondent's witness, Mr. Marcos. Mr. Marcos was the revenue agent in respondent's Newark Office who audited the Churchill "promotion."

the letter nowhere represented that the first consent form was limited in scope to those items. Thus, the letter contained no false representations.[13]

Petitioner also cannot prevail on her "misleading silence" argument. That argument would require a finding by this Court that an employee of respondent's Manhattan Office made a representation to Mr. Feldman that the first consent form would be limited in scope to Churchill flowthrough items. As we have already noted, there is no admissible evidence in the record to prove the details of the employee's statements to Mr. Feldman. Therefore, we find that the letter does not constitute a misleading silence.

Since petitioner has failed to prove that there was a false representation or misleading silence, the doctrine of equitable estoppel cannot be applied in the instant case. Respondent therefore is not estopped from relying upon the first consent form signed by petitioner.[14]

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[13]We also note that the November 1981 letter that accompanied the *unrestricted* Form 872-A contained the same terms as the February 1982 letter. Thus, it should have been clear to petitioner that the letters were not describing the scope of the consent forms.

[14]Although we hold that petitioner has not proved the existence of a false representation or misleading silence, we do not suggest that other conditions that must be satisfied in order to invoke the doctrine of equitable estoppel have been satisfied in this case. Assuming arguendo that the employee of respondent's Manhattan Office did make the statement petitioner alleges was made and that such statement was a misrepresentation of *fact*, as opposed to a representation of law or an opinion (see *Lignos v. United States*, 439 F.2d 1365, 1368 (2d Cir. 1971)), it is then required that any reliance by petitioner on such statement be reasonable (*Hudock v. Commissioner*, 65 T.C. 351, 363 (1975)). Such reliance would not have been reasonable in the instant case, since signing the first consent form under the circumstances of the instant case would be negligent conduct. It is clear that petitioner either did not read the consent form she signed, or that she did not understand the form's unambiguous, albeit technical, language. If the latter was the case, petitioner was negligent for not having someone other than Mr. Feldman review the document while Mr. Feldman was on vacation—in the former situation, petitioner clearly would have been negligent. Cf. *Gaskin v. Stumm Handel GmbH*, 390 F. Supp. 361, 367-368 (S.D.N.Y. 1975); 1 S. Williston, Contracts, sec. 35 n. 1 (3d ed. 1957).