RICHARD L. WAGNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wagner v. Commissioner
Docket No. 16849-88
United States Tax Court
T.C. Memo 1990-443; 1990 Tax Ct. Memo LEXIS 460; 60 T.C.M. (CCH) 551; T.C.M. (RIA) 90443; August 16, 1990, Filed *460 Decision will be entered under Rule 155. Petitioner was indicted on 15 counts of aiding and assisting in the preparation of false income tax returns of others in violation of section 7206(2). In a plea agreement letter prepared by his attorney, he pleaded guilty to two counts of the indictment. The plea agreement letter also contained the statement: "The Government acknowledges that Mr. Wagner has no personal income tax Civil liability for purposes of this indictment and Plea." Held: the plea agreement letter does not relieve petitioner of income tax liabilities on matters not covered by the indictment and plea. Held further: the plea agreement letter is not a valid compromise of petitioner's civil income tax liabilities because the government's attorneys were not authorized to enter into a compromise agreement. Held further: respondent is not estopped from denying the binding effect of the plea agreement letter. Richard L. Wagner, pro se. William W. Lowrance, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions *462 of section 7443A(b) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: In a notice of deficiency dated April 5, 1988, respondent determined the following deficiencies in petitioner's 1979, 1980, and 1981 Federal income tax. Additions to tax under
Year
Deficiency
Section 6653(b)
Section 6654
1979
$ 73,447 $ 36,738.50 n/a
1980
266,319  133,159.50  n/a
1981
122,593  56,295.50   10,157.49
Respondent also determined that in the event the additions to tax under section 6653(b) were not sustained, petitioner was liable for additions to tax for negligence under section 6653(a) in the amount of $ 3,673.85 *463 for 1979 and $ 13,315.95 for 1980, and under section 6653(a)(1) in the amount of $ 5,629.65 for 1981. He further determined that petitioner was liable alternatively for additions to tax for late filing under section 6651(a)(1) in the amount of $ 18,369.25 for 1979, $ 66,597.75 for 1980, and $ 28,148.25 for 1981. After concessions by the parties, the only issue for decision is whether petitioner is relieved of civil income tax liability for the taxable years 1979, 1980, and 1981 by a plea agreement entered into between the United States Attorney and petitioner with respect to a criminal proceeding in which petitioner pleaded guilty to two counts of aiding and assisting in the preparation of false income tax returns of others in violation of section 7206(2). The parties have filed a Stipulation of Settlement that resolves petitioner's liabilities in the event we hold that petitioner's individual civil tax liabilities were not compromised by the government by the November 12, 1986 plea agreement. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. At the time petitioner filed *464 his petition, he was a resident of La Jolla, California. Petitioner filed his Federal income tax returns for the years 1979 and 1980 on August 18, 1980 and April 5, 1982, respectively. Petitioner did not file a return for 1981. On both the 1979 and 1980 returns, petitioner gave his occupation as "investment counselor." During these years, petitioner promoted and sold gold mining tax shelters through his controlled corporate entity, Monetary Economics Corporation. On or about April 4, 1986, petitioner was indicted in the Southern District of California on fifteen counts of violating section 7206(2), Aiding or Assisting in the Preparation of False Income Tax Returns of Others. He pleaded not guilty to all counts. Petitioner was not then or at any later date indicted in regard to his individual income tax liabilities for the years 1979, 1980, and 1981. Petitioner was represented on the criminal charges by attorneys Clyde Munsell and Harry Steward. The United States was represented by Martin F. Klotz, Special Assistant United States Attorney, and by Edward Allard, Assistant United States Attorney. The Assistant United States Attorneys were not authorized by the Attorney General *465 or his delegate to settle petitioner's civil tax liabilities. They informed Clyde Munsell that petitioner's civil tax liabilities had not been forwarded to the Department of Justice and that the Department had no jurisdiction over these liabilities. Early in November, when Clyde Munsell met with Martin Klotz and Edward Allard, Edward Allard showed him a flow-of-funds diagram that the government planned to use in petitioner's case. Clyde Munsell believed that the government's evidence would be harmful to petitioner. He and the government attorneys discussed the terms of a plea bargain. On November 11, 1986, Clyde Munsell drafted a letter which purported to summarize the agreements reached during the plea negotiations. A hearing on petitioner's change of plea was held on November 12, 1986. The Assistant United States Attorneys were prepared to make a statement on the record as to the government's understanding of the plea bargain, since Clyde Munsell had called them that very morning to accept the plea bargain arrangement. However, at the hearing Clyde Munsell produced the letter dated November 11, 1986, which he had completed drafting that morning. The Government's attorneys *466 did not see this letter prior to the hearing. The letter states, inter alia, that petitioner agreed to plead guilty to two counts of the indictment. In addition, Paragraph 6 of the plea agreement letter (hereinafter, "Paragraph 6") states: "The Government acknowledges that Mr. Wagner has no personal income tax Civil liability for purposes of this indictment and Plea." The parties did not discuss Paragraph 6 at the change of plea hearing. They did discuss other provisions of the letter, and certain modifications were made. The letter, as modified on the record, was filed as the plea agreement between the parties. Immediately after the hearing, Martin Klotz and Edward Allard sought to obtain confirmation from petitioner that the parties were in agreement as to the meaning of Paragraph 6. They approached petitioner's counsel, Clyde Munsell, and stated that they understood Paragraph 6 to mean that petitioner had no income tax liability with respect to any taxes owed by the investors to whom petitioner had supplied false information and false documents. Clyde Munsell agreed that the government attorneys' interpretation of the meaning of Paragraph 6 was his interpretation as well. *467 Attorneys Klotz and Allard then asked Clyde Munsell to obtain a letter from petitioner stating that petitioner understood that the government did not acknowledge that he had no individual income tax liability. Petitioner refused to sign such a statement. On February 17, 1987, petitioner was sentenced to two years' imprisonment and fined $ 5,000 on one of the counts to which he pleaded guilty. He was given a suspended sentence and fined $ 5,000 on the other count to which he pleaded guilty. Petitioner was paroled after serving eleven months of his two-year sentence. OPINION Petitioner contends that Paragraph 6 of the plea agreement letter relieves him of civil liability for his individual income taxes. He does not state the years that Paragraph 6 purports to cover or explain whether he believes that Paragraph 6 relieves him of tax liability for matters unrelated to the gold mining tax shelters. He further claims that he relied to his detriment on the plea agreement, so that respondent is estopped from denying the binding effect of Paragraph 6 and from determining the deficiencies at issue in this case. Respondent asserts that Paragraph 6 of the plea agreement does not relieve *468 petitioner of civil liability for his individual income tax. Respondent further claims that even if the government's attorneys intended to relieve petitioner of civil liability for individual income tax by agreeing to Paragraph 6, they lacked authority to compromise petitioner's civil tax liabilities and therefore Paragraph 6 has no effect. We agree with respondent. Paragraph 6 states in its entirety: "The Government acknowledges that Mr. Wagner has no personal income tax Civil liability for purpose of this indictment and Plea." Petitioner was indicted on fifteen counts of aiding or assisting in the preparation of false income tax returns of others. He pleaded guilty to two counts. He was not indicted for filing fraudulent individual income tax returns. His individual civil tax liabilities were never made a part of the indictment. He entered no plea regarding his civil tax liabilities. The phrase "for purposes of this indictment and Plea" expressly limits petitioner's liability to matters covered in the indictment and plea. It does not relieve him of civil liability on matters for which he was not indicted and did not plead. The precise theory under which petitioner might *469 have been held liable for "personal income tax civil liability" for assisting in the filing of false returns of others is not clear. Nevertheless, there is evidence that the government's prosecutors and petitioner's attorneys discussed this possibility on several occasions. We need not consider whether any such concerns of petitioner or his criminal defense attorney were well founded. The language of Paragraph 6 limits petitioner's relief from "personal income tax civil liability" to liability "for purposes of the indictment and plea" on violations of section 7206(2). We find that this language did not constitute an agreement to waive petitioner's civil income tax liabilities as to his individual income tax returns for 1979, 1980, and 1981. Even if we were to accept petitioner's interpretation of Paragraph 6, we would not find that it was part of a valid compromise of petitioner's civil tax liabilities. The procedure for compromising tax claims is given in section 7122, which states: The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney *470 General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.
Petitioner's civil income tax liabilities for the years 1979, 1980, and 1981 were not referred to the Department of Justice by respondent. The only matter referred to the Department of Justice was petitioner's violation of section 7206(2). For tax cases which have not been referred to the Department of Justice, sections 7121 and 7122 provide the exclusive means of compromising the dispute. See Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929); Shumaker v. Commissioner, 648 F.2d 1198, 1200 (9th Cir. 1981); see also Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972).Both closing agreements under section 7121 and compromise agreements under section 7122 are required to be in writing and to be accepted by the Secretary. Secs. 301.7121-1 and 301.7122-1, Proced. & Admin. Regs.; secs. 601.203(a) and 601.203(b), Statement of Procedural Rules. Petitioner has not shown that an agreement that complies with these regulations and rules was entered into with the Secretary. Since petitioner's *471 civil tax case for the years here in issue had not been referred to the Department of Justice, no person in that department, including the United States Attorney, had authority to enter into a compromise agreement with petitioner with respect to these taxes. Section 7122(a) gives the Attorney General "or his delegate" the authority to compromise civil and criminal tax cases referred to the Department of Justice, but not tax cases which have not been referred to the Department. The burden is on petitioner to ascertain whether a government representative is acting within the bounds of his authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); Saulque V. United States, 663 F.2d 968, 974 (9th Cir. 1981); Brubaker v. United States, 342 F.2d 655, 662 (7th Cir. 1965). Both Edward Allard and Martin Klotz testified that petitioner's civil income tax liabilities for the years 1979, 1980, and 1981 were outside their jurisdiction and that they did not have authority to compromise these liabilities. They also testified that they told petitioner's counsel on several occasions that they did not agree to relieve petitioner *472 of his civil tax liability. We find their testimony on this matter credible. We also are convinced that, prior to presentation of the plea bargain in the District Court, petitioner was made aware of the government's position through his attorney. At the least, petitioner was on notice that he should be careful to ascertain the scope of the government attorneys' authority to compromise his liabilities. Petitioner has offered no evidence that he made any inquiry about whether the government attorneys had authority to compromise his civil tax liabilities or that either government attorney affirmatively represented to petitioner or his counsel that he had such authority. Petitioner's argument that respondent is estopped from denying the binding effect of Paragraph 6 is not persuasive. Estoppel cannot be invoked against the government because of the unauthorized acts of its agents. Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917);Saulque v. United states, supra at 976. Furthermore, the elements of equitable estoppel have not been satisfied in this case. These elements are: (1) there must be a wrongful statement or a misleading silence *473 by the party against whom the opposing party seeks to invoke the doctrine; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) the person claiming the benefits of estoppel must be adversely affected by the acts or statements of the person against whom estoppel is claimed. Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977). In this case we are convinced that the Assistant United States Attorneys did not make a wrongful statement to petitioner or mislead him by their silence. We also conclude that the failure of the government attorneys to object to Paragraph 6 did not constitute a statement of fact, and that petitioner was not ignorant of any material facts when he entered his change of plea in District Court. Finally, petitioner has failed to convince us that he was adversely affected by the acts or statements of the Assistant United States Attorneys. Petitioner explicitly stated to the District Court that he pleaded guilty to the crimes with which he was *474 charged because he was in fact guilty of them, and he never sought to change that pleading, despite ample opportunity to do so. Respondent is not estopped from denying the binding effect of petitioner's interpretation of Paragraph 6. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩