ANTHONY G. MASRAFF AND JEANNETTE B. MASRAFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Masraff v. Commissioner
Docket No. 28593-86
United States Tax Court
T.C. Memo 1989-638; 1989 Tax Ct. Memo LEXIS 638; 58 T.C.M. (CCH) 813; T.C.M. (RIA) 89638; November 30, 1989
Charles J. Escher and Edward D. Urquhart, for the petitioners. Melanie R. Urban, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: This case was assigned to Special Trial Judge Joan Seitz Pate pursuant to the provisions of section 7443A(b) and Rule 180 et seq. [1] The Court agrees with and adopts her opinion which is set forth below. *640 OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special Trial Judge: Respondent determined deficiencies and additions to petitioners' Federal income taxes for the years 1977, 1978, 1979, and 1980 as follows: Taxable
Additions to Tax
Year
Deficiency
Sec. 6659
Sec. 6653(a)
1977
$ 33,315.00
$ 1,665.75   1978
53.09
2.65   1979
3,585.00
$ 1,075.50
179.25   1980
32,618.14
1,290.32   Respondent also determined that petitioners are liable for increased interest on the deficiencies for 1977, 1979 and 1980 pursuant to section 6621(c) (formerly section 6621(d)). The parties have reached agreement as to the disposition of all matters raised in the notice of deficiency. The sole issue for our decision is whether the deficiency for 1980 is barred by the statute of limitations. The parties have stipulated that if the period of limitations on assessment has expired for 1980, then it has also expired for the carryback years 1977, 1978 and 1979. FINDINGS OF FACT Anthony G. Masraff (hereinafter "petitioner") was married during the years at issue and filed joint returns with his wife, Jeannette B. Masraff. They resided in Houston, *641 Texas, at the time they filed their petition. This case is yet another arising from differing interpretations of the terms contained in Form 872-A, Special Consent to Extend the Time to Assess Tax (hereinafter "Form 872-A"), a form created by respondent to obtain from taxpayers their consent to an indefinite extension of the period of limitations. See sec. 6501(c)(4). The language of Form 872-A has presented numerous problems and, we have issued a number of opinions to resolve disputes in which taxpayers maintain (as petitioners do in this case) that the Commissioner issued a notice of deficiency to them after the applicable period set forth in the statute of limitations had expired. See, e.g., Woods v. Commissioner, 92 T.C. 776 (1989); Estate of Camara v. Commissioner, 91 T.C. 957 (1988); Kovens v. Commissioner, 90 T.C. 452 (1988); Grunwald v. Commissioner, 86 T.C. 85 (1986); Stenclik v. Commissioner, T.C. Memo. 1989-19; Klein v. Commissioner, T.C. Memo. 1986-521. In most of these cases, we considered whether the actions taken terminated the Form 872-A pursuant to paragraph *642 (1) thereof. In contrast, in this case we consider whether respondent's actions terminated the Form 872-A pursuant to paragraph (2) thereof. See, e.g., Gmelin v. Commissioner, T.C. Memo. 1988-338, on appeal (3d Cir., May 4, 1989); Duncan v. Commissioner, T.C. Memo. 1989-22. To put our consideration into focus, we start by recounting the material events leading up to this controversy. This dispute began when petitioners filed their 1980 Federal income tax return on August 17, 1981. On that return, they claimed a loss and an investment credit attributable to a partnership entitled the Hartman Collection. Because petitioners were subject to the alternative minimum tax, they could not take advantage of the investment credit they claimed, so they filed a Form 1045, Application for Tentative Refund, on which they carried it back from 1980 to 1977. Respondent sent petitioners a refund for 1977 based on that Form 1045. On July 15, 1982, petitioners filed a Form 1040X for 1977 on which they recalculated the 1980 investment tax credit and paid an additional tax. Petitioners also filed a Form 1045 claiming an investment tax credit carryback from *643 1980 to 1978. Respondent sent petitioners a refund for 1978 based on that Form 1045. On July 15, 1982, petitioners filed a Form 1040X for 1978 with which they paid an additional tax based on a recalculation of the 1980 investment tax credit. On July 2, 1984, the parties executed a Form 872-A (revised September of 1980) extending the period of limitations for 1980 indefinitely with respect to the disallowance of losses, deductions, and credits claimed in connection with the Hartman Collection. The Form 872-A sets forth the exclusive means by which it can be terminated. It states in pertinent part: (1) The amount(s) of any Federal Income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1980 may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is *644 sent to the taxpayer(s), the time for assessing the tax or the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited. * * *. (2) This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration. An assessment for one period covered by this agreement will not end this agreement for any other period it covers. Some assessments do not eflect [sic] a final determination and appeals consideration and therefore will not terminate the agreement before the expiration date. Examples are assessments of: (a) tax under a partial agreement; (b) tax in jeopardy; (c) tax to correct mathematical or clerical errors; (d) tax reported on amended returns; and (e) advance payments. In addition, unassessed payments, such as amounts treated by the Service as cash bonds and advance payments not assessed by the Service, will not terminate this agreement before the expiration date determined in (1) above. This agreement ends on the date determined in (1) above regardless *645 of any assessment for the period includible in a report to the Joint Committee on Taxation submitted under section 6405 of the Internal Revenue Code. [Emphasis added.] Neither respondent nor petitioner sent or received a Form 872-T in this case. On December 14, 1984, respondent sent a letter to petitioners offering to resolve their case by allowing them to deduct for 1980 their cash investment in the Hartman Collection (hereinafter the "Cashout Agreement"). On January 11, 1985, petitioners accepted respondent's offer. On July 12, 1985, respondent sent petitioners' counsel a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment (Form 870), a Closing Agreement On Final Determination Covering Specific Matters (Form 906), and the Report of Individual Income Tax Examination Changes (Form 1902-B) for 1980, 1981, and 1982. He requested that petitioners sign the Form 870, Form 906, and the Form 1902-B and return the documents to him for "closure of the case." Petitioners signed the documents and returned them to respondent on July 30, 1985. The Form 870 showed a decrease in petitioners' tax for 1980. *646 However, we note that in preparing the Form 870, respondent failed to recoup petitioners' 1980 investment tax credit carryback to 1977 and 1978. This resulted in an understatement of tax of over $ 30,000. Nevertheless, on October 4, 1985, respondent sent a form, Letter 987(DO), to petitioners. In that letter, referring to 1978, 1980, 1981, and 1982, the district director states that "We have completed our review of the [examiner's] report and . . . We have accepted the report." That letter also stated that a completed closing agreement was enclosed. However, that was not the case. Respondent never executed a closing agreement in this case. In accordance with the Cashout Agreement and the figures on the Form 870, respondent processed an overassessment of petitioners' 1980 tax on November 11, 1985. The amount of the overassessment was refunded to petitioners. In the meantime, however, respondent forwarded petitioners' 1977 income tax return to his review staff. The purpose for the review was to issue a notice of deficiency to recapture petitioners' 1977 investment tax credit carryback. In the course of his examination, the reviewer discovered the errors on the Form 870. *647 On January 29, 1986, the reviewer recommended that the closing agreement not be executed by respondent until a number of mistakes were corrected. First, he recommended disallowing the investment tax credit claimed with respect to the Hartman Collection that petitioners had carried back to 1977 and 1978. He also recommended that the portion of the investment tax credit allocable to the Hartman Collection claimed for 1982 be disallowed, which credit petitioners had carried back to 1979. Finally, he recommended that a corrected Form 870 be secured from petitioners for 1977, 1978, 1979, 1980, 1981, and 1982. In making the corrections pinpointed by review, respondent had to reestablish petitioners' record for 1978, 1979, 1980, and 1981 on his audit information management system (hereinafter "A.I.M.S."). Respondent instituted A.I.M.S. to keep track of returns on which taxpayers agreed to extend the period of limitations. Respondent had previously deleted those returns from A.I.M.S. as a result of the foregoing events. On April 9, 1986, respondent issued a notice of deficiency covering 1979, 1980 and the carryback years 1977 and 1978. Respondent was able to determine a deficiency *648 in petitioners' carryback years 1977 and 1978 only by determining a deficiency for 1980. Moreover, respondent was able to determine a deficiency in petitioners' 1980 income tax only by ignoring his Cashout Agreement. As stated earlier, the parties have stipulated that if we find that the period of limitations on assessment is barred by the statute of limitations for 1980, then, the statute also bars 1977, 1978, and 1979. Petitioners contend that the period of limitations for 1980 expired prior to respondent's issuance of the notice of deficiency on April 9, 1986. They reason that, when respondent processed the overassessment for 1980 on November 11, 1985, that overassessment reflected the final determination of tax and the final administrative appeals consideration for 1980, thereby terminating (pursuant to paragraph (2) of Form 872-A) the period of limitations. Additionally, petitioners contend that respondent improperly reopened his examination of 1980 and conducted a second inspection of their 1980 books and records in violation of section 7605(b). Respondent maintains that the Form 872-A was not terminated until he issued the notice of deficiency because prior to that time *649 he had not: (1) made an "assessment" of an "increase" in petitioners' 1980 tax; (2) made the final determination of petitioners' 1980 tax; and (3) made the final administrative appeals consideration for 1980. In addition, respondent denies that he improperly reopened petitioners' 1980 year or conducted a second inspection of petitioners' books and records for 1980. OPINION The general rule set forth in section 6501(a) is that respondent must assess income tax within three years after the applicable return was filed. The three-year period may be extended, however, if a taxpayer and the Internal Revenue Service execute a written agreement prior to expiration of the period of limitations. Sec. 6501(c)(4). When a taxpayer alleges that assessment is barred by the statute of limitations and makes a prima facie case by proving the filing date of the income tax return and the expiration of the period of limitations prior to the mailing of the notice of deficiency, the burden of going forward with the *650 evidence shifts from the taxpayer to respondent. Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Respondent may discharge this burden by showing that the running of the period of limitations was extended and that a notice of deficiency was mailed prior to the expiration of the extended period. Adler v. Commissioner, 85 T.C. 535, 540-541 (1985). If respondent introduces an apparently valid consent, the taxpayer again has the burden of going forward to affirmatively show the invalidity thereof. Crown Willamette Paper Co. v. McLaughlin, 81 F.2d 365, 367 (9th Cir. 1936); Concrete Engineering Co. v. Commissioner, 19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). A consent to extend the period of limitations on assessment is not a contract but is a unilateral waiver of the taxpayer's defense on such ground. Stange v. United States, 282 U.S. 270 (1931); Woods v. Commissioner, 92 T.C. 776, 780 (1989); Kronish v. Commissioner, 90 T.C. 684, 693 (1988); *651 Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983); Tallal v. Commissioner, 77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). Nevertheless, section 6501(c)(4) requires that the parties reach a written agreement regarding the extension. The section refers only to the time by which such agreement must be reached. It leaves the parties free to decide the terms governing the extension. Pursell v. Commissioner, 38 T.C. 263, 278 (1962), affd. per curiam 315 F.2d 629 (3d Cir. 1963). Consequently, contract principles are significant in reviewing a written extension agreement under section 6501(c)(4). Piarulle v. Commissioner, supra at 1042. Petitioners filed their 1980 income tax return on August 17, 1981. Therefore, the period of limitations ordinarily would have expired on August 17, 1984. However, on July 2, 1984, prior to the expiration of the period of limitations, the parties executed the Form 872-A. Since it was executed in a timely manner, it extended the period of limitations indefinitely. Thus, only if the agreement was terminated and the period *652 of limitations expired prior to the issuance of the notice of deficiency on April 9, 1986, will the statute of limitations bar assessment and collection of petitioners' 1980 income tax. Petitioners bear the burden of proving that the period of limitations expired prior to the date on which respondent issued the notice of deficiency. United States v. Gurley, 415 F.2d 144, 147 (5th Cir. 1969); Rules 39, 142(a). It is uncontested that neither party mailed or received a Form 872-T for 1980. Therefore, this agreement could not have terminated pursuant to the provisions of paragraph 1 prior to the issuance of the notice of deficiency. However, petitioners contend that the agreement terminated pursuant to the provisions of paragraph 2 when respondent processed their overassessment on November 11, 1985. Under paragraph 2, the agreement terminates and the period of limitations expires when respondent makes an assessment of an increase in tax that reflects his final determination of tax and his final administrative appeals consideration. Although the words "abatement" or "overassessment" *653 do not appear on the Form 872-A at issue, petitioner contends that paragraph 2 was included in Form 872-A to terminate automatically the period of limitations in instances where the taxpayer and the Internal Revenue Service agree upon the proper amount of overassessment or deficiency. Petitioner further contends that paragraph (2) eliminates the necessity of either party sending a Form 872-T or respondent issuing a notice of deficiency. [2] In support of his contention, petitioner cites Internal Revenue Manual, section 4541.81(5) (June 12, 1984), which states: Do not issue Form 872-T for fully agreed taxable years resulting in an assessment or overassessment in which Form 872-A (Rev. Mar. 1979 or later) was secured. In those cases, the period of limitations for assessment generally will terminate immediately after assessment of an increase in tax which reflects the final administrative appeals consideration for any such period(s). *654 In addition, petitioners argue that there is no difference between an assessment of an increase in tax and an overassessment of a decrease in tax for purposes of the Form 872-A. In support thereof, petitioners again point to section 4541.81(5) (June 12, 1984) of respondent's Internal Revenue Manual which states: The provision on Form 872-A concerning the early termination of the period of limitations applies equally to an overassessment for a taxable year if such overassessment reflects the final determination of tax and the final administrative appeals consideration. Since the Form 872-A at issue in this case was revised as of September of 1980, the quoted portions of respondent's manual clearly apply to the present circumstances. Respondent argues, however, that provisions of the Internal Revenue Manual are not mandatory and, therefore, do not confer any rights upon taxpayers. United States v. Will, 671 F.2d 963, 967 (6th Cir. 1982). We agree with that statement. However, petitioners are not citing this provision to expand their statutory rights. They are *655 looking to it to show respondent's interpretation of the agreement between them. Nevertheless, to interpret an agreement we must look to the objective manifestation of mutual assent as evidenced by the parties own acts. 1 S. Williston, Contracts, secs. 22 and 35 (3d ed. 1957). Therefore, we look to the Form 872-A, as it is the written manifestation of the parties' agreement. Kronish v. Commissioner, 90 T.C. 684, 693 (1988). Moreover, in construing its terms, we look to the language of the agreement itself. 1 S. Williston, supra at secs. 601 and 609. Only if such language is ambiguous do we look behind the instrument to ascertain the intent of the parties. Woods v. Commissioner, supra at 776-780. A written agreement is ambiguous if it can reasonably be interpreted to have more than one meaning. See Sawyer v. Commissioner, T.C. Memo. 1988-132. This Court has consistently *656 required the parties to adhere to the terms contained in their written agreements to extend the period of limitations, notwithstanding purported side agreements, intentions or understandings. See, i.e., Kronish v. Commissioner, supra at 689-691; Tallal v. Commissioner, supra;Ribb v. Commissioner, T.C. Memo. 1988-379. Moreover, we have strictly construed the language contained in the written agreements. See, i.e., Grunwald v. Commissioner, supra;Adler v. Commissioner, 85 T.C. 535 (1985). Under these facts, we find no ambiguity in paragraph 2 of the Form 872-A. It specifically requires an "assessment date of an increase in the * * * tax." Respondent processed an overassessment in petitioner's tax on November 11, 1985 and petitioner would have us equate this overassessment with an assessment of an increase in tax. But, an overassessment is not an increase in tax; rather it is a decrease in tax. Respondent's Internal Revenue Manual cannot change the plain meaning of those words. Consequently, we cannot find that assessments which increase tax include overassessments which decrease tax. [3]
*657 It follows then that, because respondent did not assess petitioner for any increase in tax prior to April 9, 1986, the Form 872-A was not terminated under paragraph 2 prior to that date. Furthermore, because the Form 872-A was not terminated under either paragraph 1 or 2 prior to April 9, 1986, we hold that the notice of deficiency is not barred by the statute of limitations. Petitioners next allege that respondent improperly reopened their 1980 tax year. Specifically, petitioners contend that the revenue agent did not obtain the necessary authorization for reopening as required by section 601.105(j), Statement of Procedural Rules, and Rev. Proc. 85-13, 1985-1 C.B. 514. However, if in fact this case had been closed, which we do not decide, we find that no "reopening" occurred here. The revenue procedure specifically states that "Contacts with taxpayers to verify or adjust items disclosed on information returns, including items of income distributable to taxpayers by partnerships * * * are not examinations or reopening." Since respondent's determination involved only partnership *658 items, authorization was not required. Petitioners also contend that respondent conducted a second inspection of their 1980 books of account prohibited by section 7605(b). Section 7605(b) provides: No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. The purpose of section 7605(b) is to prevent the Internal Revenue Service from undertaking repetitive investigations as a method of taxpayer harassment. The statute was not meant to restrict the scope of respondent's legitimate power to protect the revenue. United States v. Powell, 379 U.S. 48, 55 n.13 (1964); Collins v. Commissioner, 61 T.C. 693, 698-699 (1974). Therefore, it is not to be read so broadly as to defeat the powers granted to the Internal Revenue Service to examine the correctness of taxpayers' returns. De Masters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963), *659 cert. dismissed 375 U.S. 936 (1963). The notice of deficiency was not a result of any second inspection of petitioners' books and records. Rather, at most, respondent reinspected petitioners' 1980 tax return and the original examination report. This does not constitute an inspection of a taxpayer's books of account. Benjamin v. Commissioner, 66 T.C. 1084, 1097 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); Pleasanton Gravel Co. v. Commissioner, 64 T.C. 510, 528 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978). To reflect the foregoing -- A decision will be entered reflecting the stipulations of the parties. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Rev. Proc. 79-22, 1979-1 C.B. 563, states in section 4 that: .02 With the exception of the mailing of a notice of deficiency, written notification by the Service to the taxpayer(s) of termination of Service consideration can only be made using Form 872-T. * * * .04 Steps taken to terminate Forms 872-A by the Service or the taxpayer(s) other than by using Forms 872-T (e.g., by letter or orally) will not terminate Form 872-A. This procedure necessarily applies only to expiration dates under paragraph (1) of Form 872-A. To construe this procedure to apply to the entire Form 872-A would result in rendering paragraph (2) meaningless.↩
3. With this finding, we need not consider whether, under these facts, the overassessment reflected the final determination of tax and the final administrative appeals consideration.↩