RICHARD D. AND MARY E. CANNON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cannon v. Commissioner
Docket No. 35354-87
United States Tax Court
T.C. Memo 1990-410; 1990 Tax Ct. Memo LEXIS 421; 60 T.C.M. (CCH) 391; T.C.M. (RIA) 90410; August 2, 1990, Filed *421 Decision will be entered for the respondent. Jay J. Freireich, for the petitioners. Jane B. Wilson, for the respondent. WELLS, Judge. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in petitioners' Federal income tax: Taxable Year Ended
Deficiency
December 31, 1975
$ 3,792
December 31, 1976
2,884
The sole issue presented is whether assessments for the years in issue are barred by the applicable period of limitations. Petitioners do not contest the substantive merits of respondent's determinations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners are husband and wife (henceforth, references to "petitioner" shall be solely to petitioner Richard D. Cannon). They resided in Syosset, New York, when they filed their petition. Petitioners timely filed Federal income tax returns for the taxable years in issue, 1975 and 1976. On their joint Federal income tax return for taxable year 1975, petitioners deducted losses attributable to investment vehicles known as "Premier Cattle" and "Melbourne Concept." On their return *422 for taxable year 1976, petitioners reported income from Premier Cattle. Both investment vehicles subsequently became the subject of audits by respondent. On December 19, 1978, because Premier Cattle was the subject of an ongoing audit, respondent requested, and petitioners signed, a Form 872 which purports to extend the period of limitations for taxable year 1975 to December 31, 1979 (the "first 872"). While petitioner was home on holiday leave from a work assignment in Turkey, revenue agent John Bahadurian went to petitioners' home to procure their signatures on the first 872. On September 13, 1979, petitioners signed another Form 872 which purports to extend to December 31, 1980, the period of limitations for taxable years 1974 through 1976 (the "second 872"). On September 30, 1980, petitioners signed a final agreement to extend the limitations period for taxable years 1974 through 1976, using Form 872-A, which, by its terms, purports to extend indefinitely the limitations period for those years (the "872-A"). The following table illustrates the extension forms signed by petitioners: Taxable Year(s)
Agreed Termination
Date of Last
Form
Involved Date Signature First 872
1975        12/31/79
12/19/78
Second 872
1974 through
12/31/80
9/24/79 1976       872-A
1974 through
open    10/80   1976        The *423 first 872 contains a correction. Form 872 provides a blank line for the taxable year which is the subject of the agreement. In that blank line for the first 872, "Dec 31, 1979" initially was typed. Slash marks then were typed across "1979," and "1975" was typed immediately after the crossed out year. Immediately after and below the first blank line, Form 872 provides a second blank line for the termination date of the agreement. In the second blank line, "Dec 31" was typed directly below the "Dec 31" appearing on the first blank line above, while "1979" was typed directly below "1975," rather than below the crossed out "1979" (leaving several spaces between "Dec 31" and "1975"). A copy of the first 872 is attached as an addendum hereto. The margin next to the correction contains agent Bahadurian's initials. Petitioners did not initial the correction. On August 31, 1981, petitioners signed a Form 870 waiver of restrictions on assessment. Petitioners consented to the assessment of a deficiency of $ 3,882 for taxable year 1974. The Form 870 also itemizes overpayments of $ 416 and $ 745 for taxable years 1975 and 1976, respectively. A Form 4549 list of examination changes attributes *424 those adjustments primarily to Premier Cattle. On August 22, 1987, petitioners signed a Form 872-T in order to terminate the 872-A. The Form 872-T makes reference to the 872-A and states that that agreement's "validity * * * is being disputed." On October 16, 1987, respondent issued a statutory notice of deficiency to petitioners. The notice determines deficiencies in Federal income tax for taxable years 1975 and 1976 that are attributable to Melbourne Concept. Respondent's determinations are based upon our opinion in Nicolazzi v. Commissioner, 79 T.C. 109 (1982), affd. per curiam 722 F.2d 324 (6th Cir. 1983), which involved that investment vehicle. OPINION The only issue in the instant case is whether the applicable period of limitations bars assessments of the determined deficiencies. The bar of the statute of limitations is an affirmative defense and must be pleaded. Rule 39; Woods v. Commissioner, 92 T.C. 776, 779 (1989); Adler v. Commissioner, 85 T.C. 535, 540 (1985). A taxpayer who pleads the statute of limitations makes a prima facie case by showing that the Commissioner mailed the statutory notice of deficiency after expiration of the applicable limitations period. After *425 such a showing is made by a taxpayer, the Commissioner bears the burden of going forward with evidence removing the bar. Woods v. Commissioner, supra at 779; Adler v. Commissioner, supra at 540. The Commissioner meets that burden with proof of an agreement, valid on its face, that extends the applicable period of limitations. Adler v. Commissioner, supra at 540-541. Once the Commissioner comes forward with such an agreement, the burden of going forward with the evidence shifts back to the taxpayer, who must show that the agreement is invalid. Adler v. Commissioner, supra at 541; Masraff v. Commissioner, T.C. Memo. 1989-638. The ultimate burden of persuasion with respect to issues involving the statute of limitations defense under section 6501 remains at all times with the taxpayer. Rules 39, 142(a); Kronish v. Commissioner, 90 T.C. 684, 692 (1988). Section 6501(a)[1] *426 supplies the general rule which requires that a tax be assessed "within 3 years after the return was filed." A return filed prior to its due date is deemed filed on the due date. Sec. 6501(b)(1). In the instant case, petitioners properly pleaded the statute of limitations and made a prima facie case with respect to both of the years in issue. The applicable period of limitations would have closed taxable years 1975 and 1976 on April 15, 1979, and April 15, 1980, respectively. Respondent issued the statutory notice of deficiency well after those dates, on October 16, 1987. In satisfaction of his burden of refuting petitioners' prima facie case, respondent offered a series of agreements to extend the limitations period with respect to the years in issue. Thus, the issue presented is whether petitioners satisfied their burden of establishing the invalidity of those agreements. An agreement extending a period of limitations is not a contract but is a unilateral waiver of the defense provided by the period of limitations. Woods v. Commissioner, supra at 780; Kronish v. Commissioner, supra at 693. Nonetheless, section 6501(c)(4) requires that the period of limitations be extended by written agreement, and contract principles determine both the validity and effect of such an agreement. Kronish v. Commissioner, supra at 693; *427 Piarulle v. Commissioner , 80 T.C. 1035, 1042 (1983). Altered Form
Petitioners challenge the validity of the first 872. If that agreement is invalid, subsequent agreements covering taxable year 1975 would be invalid also, because they would have been entered into after expiration of an extended period of limitations. Sec. 6501(c)(4). Specifically, petitioners contend that the first 872 was altered after they signed it. As found above, the first 872 contains a correction. When the first 872 was originally prepared, and prior to the correction, it would have extended the period for assessing Federal income tax for taxable year 1979. The year "1979," however, is crossed out and the year "1975" is typed immediately after the crossed out year. Invoking contract principles, petitioners argue that respondent may not enforce an altered form to which they did not assent. Respondent maintains that the first 872 was corrected prior to the time petitioners signed it in their home on December 19, 1978. Invoking contract principles as well, respondent argues that petitioners agreed to the terms of the corrected agreement. If the first 872 was altered after petitioners signed it, it is invalid *428 and does not extend the limitations period for taxable year 1975. In Cary v. Commissioner, 48 T.C. 754, 766 (1967), we explained, The same physical document, a Form 872, was signed by the petitioner and on behalf of the respondent but the document was signed by petitioner had been changed before being signed on behalf of the respondent. Such a document did not constitute a consent in writing by both the taxpayer and the Commissioner.
On the other hand, if respondent's agent corrected the first 872 prior to the time petitioners signed it, then a valid agreement extends the limitations period for taxable year 1975. In Gillespie v. Commissioner, 20 B.T.A. 1068, 1084 (1930), the Board of Tax Appeals stated, If the alteration was made before the instrument was signed by the petitioner it is undoubtedly good for the purpose claimed by the respondent; if altered after petitioner's signature was affixed it does not extend the time beyond December 31, 1926, and the notice of deficiency was mailed too late.
Having framed the issue thusly, we find that the first 872 was altered prior to the time petitioners signed it and hold, therefore, that the agreement is valid to extend the limitations *429 period for taxable year 1975. In reaching our conclusion, we are persuaded by several considerations. First, agent Bahadurian testified that the first 872 was altered prior to the time he presented it to petitioners for their signatures, and petitioner did not expressly refute that testimony. Rather, petitioner testified that it was his practice to initial alterations on agreements and that because his initials do not appear on the first 872, he must have signed it before it was altered. Second, while we find the testimony of agent Bahadurian somewhat tenuous, especially in light of the fact that his testimony concerned events occurring 10 years earlier, an examination of the first 872 [2] corroborates his testimony. Specifically, an examination of the first 872 discloses that the second blank line, which is a line for the date the extended limitations period expires, was filled-in after the correction on the first blank line was made ("1979" was stricken and replaced by "1975" on the first blank line, the line reserved for the taxable year involved). Notably, on the second blank line, "1979" is typed directly below the "1975" on line above, indicating to us that "1979" likely was *430 typed after the line above had been corrected. We find the foregoing scenario more plausible than one where agent Bahadurian might have filled-in all but one of the blank lines on the first 872, procured petitioners' signatures, altered the form, and then filled the remaining blank, i.e., the blank reserved for the termination date of the agreement. We therefore find that the form was corrected, completed, and then submitted for signature by petitioners. Further, petitioners would have us believe that on December 19, 1978, they intended to sign an agreement to extend the limitations period for taxable year 1979 to December 31, 1979. While there are some who do sign agreements without first reviewing them, that possibility conflicts with petitioner's testimony that he was an experienced businessman who had signed many agreements. On the other hand, if petitioners signed the agreement while aware of such an error, they could be estopped from asserting the agreement's invalidity. Piarulle v. Commissioner, supra at 1044. *431 We need not rest our decision on estoppel, however, because we have found that the first 872 was corrected prior to the time petitioners signed it. We therefore hold that the first 872 was valid to extend the period of limitations for taxable year 1975. Termination of 872-A
Petitioners next argue that respondent issued the statutory notice after the 872-A had terminated through lapse of a reasonable period of time. In Estate of Camara v. Commissioner, 91 T.C. 957 (1988), we held that a Form 872-A which provided specific methods for its termination did not terminate through mere lapse of time. Citing earlier cases reaching the same result we explained, We reached this result both because the Form 872-A explicitly allowed only two methods of termination and because the revised Form 872-A was meant to reduce the uncertainty that had surrounded indefinite extension agreements by eliminating the question of whether various written communications constituted termination letters. * * *
Estate of Camara v. Commissioner, 91 T.C. at 961. Petitioners indicated at trial that they wished to make the termination by lapse of time argument because they wanted to appeal our holding in Estate of *432 Camara to the Second Circuit. In Stenclik v. Commissioner, F.2d (2d Cir., June 26, 1990), the Second Circuit, however, recently adopted our holding in Estate of Camara. The 872-A in the instant case states that it terminates 90 days after "the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s)," the date respondent mails a Form 872-T to petitioners, or the date respondent mails a statutory notice of deficiency. Thus, as in Estate of Camara and Stenclik, specific methods of terminating the agreement have been provided. We therefore adhere to the rule of law stated in Estate of Camara and Stenclik and hold that the agreement does not terminate after the lapse of a "reasonable" period of time. Although petitioners argue that we did not decide in Estate of Camara whether the holding of that case could be applied retroactively, petitioners' argument is without merit, as our opinion in Estate of Camara, filed in 1988, decided the taxpayer's liabilities for taxable years 1971 through 1977. Nothing in the opinion in Estate of Camara, or Stenclik for that matter, remotely *433 suggests that such holding should apply only prospectively. Estoppel
Petitioners next argue that the extension agreements they signed may not be used to assess the deficiencies, which are attributable to Melbourne Concept. Petitioners argue that they signed the agreements in order to obtain refunds of overpayments attributable to Premier Cattle. Although petitioner's exact theory is unclear to us, it appears that petitioners argue either (1) that respondent obtained the extension agreements by misrepresenting their intended use and therefore respondent is estopped from enforcing them or (2) that the extension agreements should be interpreted as restrictive in scope. We reject both arguments. First, the record contains no evidence indicating that respondent obtained the extension agreements through fraud or misrepresentation. Petitioners may have signed the extension agreements believing that the extension agreements would only be used to refund overpayments attributable to Premier Cattle, but we find that petitioners' misconception was not the product of any misrepresentation or wrongful, misleading silence by any of respondent's agents. A misrepresentation or wrongful, misleading *434 silence must be proved in order to establish equitable estoppel. Kronish v. Commissioner, 90 T.C. at 695; Wollesen v. Commissioner, T.C. Memo. 1987-611; Faulkner v. Commissioner, T.C. Memo. 1985-536. Moreover, petitioners' misconception does not affect the enforceability of the extension agreements, as written. We have held repeatedly that the existence of an agreement extending the limitations period and the interpretation of that agreement are determined by "objective manifestation of mutual assent as evidenced by the parties' overt acts." Kronish v. Commissioner, 90 T.C. at 693.In a host of cases, we have rejected attempts by taxpayers to transform unambiguous, unrestricted extension agreements into those that are restricted. Kelly v. Commissioner, T.C. Memo. 1990-202; Ribb v. Commissioner, T.C. Memo. 1988-379; Sager v. Commissioner, T.C. Memo. 1988-193; Wollesen v. Commissioner, supra.Similarly, in Masraff v. Commissioner, T.C. Memo. 1989-638, we held that a Form 872-A was not terminated by the processing of an overassessment of tax, when the form stated that it would terminate upon the assessment of an increase in tax. We explained: This Court has consistently required *435 the parties to adhere to the terms contained in their written agreements to extend the period of limitations, notwithstanding purported side agreements, intentions or understandings. Moreover, we have strictly construed the language contained in the written agreements. [58 T.C.M. 813, 817, 58 P-H Memo T.C. par. 89,638 at 3245 (1989); citations omitted.]
In the instant case, there is no objectively discernable indication that the scope of any of the extension agreements is to be limited to adjustments respecting Premier Cattle. Consequently, we decline petitioners' request that the extension agreements be construed as restrictive. Petitioners argue also that their execution of a Form 870 waiver of restrictions on assessment estops respondent from seeking the deficiencies in issue. We reject that argument also as meritless. The Form 870 signed by petitioners states, "Your consent will not prevent you from filing a claim for refund * * *. It will not prevent us from later determining, if necessary, that you owe additional tax * * *." Other taxpayers have unsuccessfully made the same argument. Payson v. Commissioner, 166 F.2d 1008, 1010 (2d Cir. 1948); Patterson v. Commissioner, T.C. Memo. 1966-219. *436 Interest
Finally, petitioners argue that section 6601(c) requires the abatement of interest in the instant case. Section 6601(c) provides as follows: (c) Suspension of Interest in Certain Income, Estate, Gift, and Certain Excise Tax Cases. -- In the case of a deficiency as defined in section 6211 (relating to income, estate, gift, and certain excise taxes), if a waiver of restrictions under section 6213(d) on the assessment of such deficiency has been filed, and if notice and demand by the Secretary for payment of such deficiency is not made within 30 days after the filing of such waiver, interest shall not be imposed on such deficiency for the period beginning immediately after such 30th day and ending with the date of notice and demand and interest shall not be imposed during such period on any interest with respect to such deficiency for any prior period. [Emphasis supplied.]
By its terms, the statute provides for abatement of interest when the Commissioner delays making "notice and demand" for payment of a deficiency after a taxpayer has filed a waiver of restrictions on assessment "of such deficiency." Petitioners, however, have not filed a waiver with respect to the deficiencies *437 in issue. That is why respondent issued a statutory notice and we have jurisdiction over the taxable years in issue. Petitioners' argument therefore is without merit. In order to reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule References are to the Tax Court Rules of Practice and Procedure.
2. We required that the original, rather than a copy, of the first 872 be made a part of the record in the instant case. We therefore have examined the original of the first 872 in reaching our conclusion.↩