SAN GABRIEL ENERGY, ANTHONY KISS, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
San Gabriel Energy v. Commissioner
Docket No. 1455-92
United States Tax Court
T.C. Memo 1994-150; 1994 Tax Ct. Memo LEXIS 153; 67 T.C.M. (CCH) 2620; April 12, 1994, Filed *153 An appropriate order will be issued denying petitioner's Motion for Summary Judgment. For petitioner: Philip G. Panitz. For respondent: David A. Winsten. CLAPP
CLAPP
MEMORANDUM OPINION CLAPP, Judge: This case is before us on petitioner's motion for summary judgment filed pursuant to Rule 121. The issue is the validity of a Form 872-0 signed on behalf of the San Gabriel Energy partnership (the partnership) consenting to extend the statute of limitations with respect to the partnership's 1984 tax year, and the effect of a letter of discontinuance of audit erroneously issued to the partnership by respondent with regard to the same year. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Background
San Gabriel Energy was a California partnership engaged in the business of leasing and operating wind power electrical generating machines. The partnership filed its Federal income tax return for 1984 on or about April 15, 1985. The Internal Revenue Service (IRS) began examining the partnership's 1984 return in May 1985. The terms of *154 the original partnership agreement provided in pertinent part: 5. Powers and Responsibilities of Managing Partner
5.1 The Managing Partner is exclusively entitled to manage and control the Partnership business. The Managing Partner may from time to time delegate their [sic] responsibilities. The General Partners shall not have any voice and shall not take part in the management or control of the business of the Partnership, nor shall the General Partners have any power or authority to act for or bind the Partnership. * * * * * * Without limiting the foregoing, the Managing Partner shall have the power and authority, at the expense of the Partnership, to contest any determinations by the Internal Revenue Service to disallow any deductions claimed by the Partnership or any partner; * * *
6. Powers of the General Partners
6.1 The General Partners shall not have any voice or take part in the management or control of the business or transact any business on behalf of the Partnership unless specifically requested to by the Managing Partner. No General Partner shall have the power to sign for or to bind the Partnership. * * * 6.2 The General Partners, by a majority *155 vote in interest at a duly called meeting of the Partnership may * * * (c) amend the Partnership Agreement; and (d) remove the Managing Partner. 6.3 In the event of removal of the Managing Partner, the Managing Partner shall have a 1% General Partnership interest.
Aside from listing Joseph L. Sanders (Sanders) as managing partner, the partnership agreement does not list the number or names of any other partners. It is undisputed that Sanders was the partnership's tax matters partner (TMP) and managing general partner from the partnership's inception until April 25, 1987. At a meeting of the general partners held at Sanders' home on April 25, 1987, 12 partners unanimously voted to replace Sanders with Anthony Kiss (Kiss), a general partner, as the new tax matters partner and managing partner because Sanders was moving from San Gabriel to Oxnard, California. The meeting was attended by Sanders' wife, LaRue Sanders, who took minutes of the meeting. Sanders notified all general partners of the choice of the new managing/tax matters partner by letter dated April 26, 1987. The letter stated that Sanders would continue to prepare the partnership's returns. After the April 25, *156 1987, meeting, Kiss took over managing the partnership's business, which primarily involved operation of the partnership's wind turbines. Kiss took no part in preparation of the partnership's tax returns; rather, he delegated that responsibility to both Sanders and LaRue Sanders. The latter was familiar with the tax aspects of the partnership and was aware that it was under audit for the 1984 taxable year. Kiss was in constant contact with the Sanders with regard to partnership business from the time Kiss was voted managing partner and TMP in April 1987, until January 31, 1990. During that period, Kiss and LaRue Sanders discussed the status of the 1984 audit. Wendy Fisher (Fisher) (then Wendy Berry) was the revenue agent assigned to audit the partnership's 1984 return. From the beginning of the audit in 1985, Fisher dealt with Sanders as the partnership's TMP. In late 1987, Fisher contacted Sanders by telephone and told him that she would be sending a revenue agent to Sanders' home in Oxnard to get his signature on a consent form to extend the statute of limitations. LaRue Sanders recalled Sanders' receiving a consent form in the mail and deciding to sign it only after a phone *157 call from a revenue agent. Sanders signed a Form 872-0, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, as its TMP, on December 21, 1987. The partnership address listed on the consent form was the same address used by Sanders in his April 26, 1987, letter to the general partners: 376 Walnut Drive, Oxnard, California 93030 (Oxnard address). The Form 872-0 was executed by Fisher on behalf of the District Director on January 19, 1988. The terms of the consent provide: (1) The amount of any Federal income tax with respect to any person on any partnership item(s) for the above named partnership for the period(s) ended December 31, 1984 may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-N, Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, from the partnership; or (b) the Internal Revenue Service mails Form 872-N to the partnership. If a notice of Final Partnership Administrative Adjustment is sent to the partnership, the time for assessing the tax for the periods stated in the notice *158 of Final Partnership Administrative Adjustment will not end until 1 year after the date on which the determination of the partnership items becomes final. (2) This agreement ends on the earlier of the expiration date determined in (1) above or the assessment date that reflects the final determination of tax and the final administrative appeals consideration. An assessment for one period covered by this agreement will not end this agreement for any other period it covers. Some assessments do not reflect a final determination and appeals consideration and therefore will not terminate the agreement before the expiration date. Examples are assessments of: (a) tax under a partial agreement; (b) tax in jeopardy; (c) tax to correct mathematical or clerical errors; (d) tax reported on amended returns; and (e) advance payments. In addition, unassessed payments, such as amounts treated by the Service as cash bonds and advance payments not assessed by the Service, will not terminate this agreement before the expiration date determined in (1) above. This agreement ends on the date determined in (1) above regardless of any assessment for any period includible in a report to the Joint Committee *159 on Taxation submitted under section 6405 of the Internal Revenue Code. (3) This agreement will not reduce the period of time otherwise provided by law for making such assessment. (4) The partnership or partners may file a request for administrative adjustment at any time within 3 three years after the filing of the partnership return and before a notice of Final Partnership Administrative Adjustment is mailed to the Tax Matters Partner.
Sanders developed a brain abscess in 1989 for which he received surgery. At the time of the hearing on this motion, he was incapacitated and not able to remember anything. On January 31, 1990, respondent mailed a letter addressed to the partnership at Sanders' Oxnard address, stating that the IRS had discontinued the audit of the partnership's 1984 return because the statute of limitations had expired. The letter enclosed an examination report showing the taxes respondent believed would be due but advised the partnership that it had no legal obligation to pay the deficiencies. The letter was signed by a section chief in the Quality Assurance Branch. On October 23, 1990, respondent mailed a letter to Sanders as the TMP at his Oxnard address, *160 proposing adjustments to the partnership items on the partnership's 1984 return. The letter provided a telephone contact number and stated that a Notice of Final Partnership Administrative Adjustment (FPAA) would be issued if respondent did not receive a written reply within 60 days. On March 4, 1991, respondent sent a letter to the partnership stating that the January 31, 1990, letter was issued in error. In the March 4, 1991, letter, respondent explained that a Form 872-0 consent had been executed by Sanders as the partnership's TMP, thus the statute of limitations had not expired with regard to the partnership's 1984 return, and the October 1990 letter proposing adjustments thereto was controlling. As a result of the procedural delay caused by the IRS, the deadline for protesting the proposed adjustments was extended by 6 months. Respondent issued an FPAA with regard to the partnership's 1984 return on October 22, 1991. The FPAA was sent to Sanders as TMP at his Oxnard address. The record contains no indication that the partnership, Kiss, or Sanders notified the IRS of a new TMP designation at any time prior to the issuance of the FPAA. The petition herein was filed on *161 January 21, 1992, by Kiss as TMP on behalf of the partnership. Kiss resided in California at the time the petition was filed. Petitioner presents the following three arguments in support of his motion for summary judgment: (1) Sanders was not the TMP at the time he signed the Form 872-0, and therefore had no authority to bind the partnership; (2) respondent is equitably estopped from determining deficiencies after issuing the letter discontinuing audit of the partnership's 1984 year; and (3) even if the consent is valid, the period of limitations expired "90 days [sic]" after issuance of the letter discontinuing the audit. Discussion
Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact and that a decision may be entered as a mater of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd.    F.3d     (7th Cir., Feb. 22, 1994). The burden of proof is on the moving party to show that no issue of material fact exists, and the evidence is viewed in the light most favorable to the party opposing the motion. Blanton v. Commissioner94 T.C. 491, 494 (1990). *162 Validity of the Form 872-0
The Form 872-O is the consent form designated by respondent to effect an extension of the statute of limitations period for all partners of a partnership pursuant to section 6229(b)(1)(B). It does not have an automatic termination date. It may be signed by the TMP or any other person authorized by the partnership in writing to enter into such agreement. Sec. 6229(b)(1)(B). The partnership timely filed its 1984 Federal income tax return on April 15, 1985. Respondent mailed the FPAA on October 22, 1991, well after the general 3-year period of limitations on assessment and collection prescribed by section 6229(a) had expired on April 15, 1988. Respondent, on January 19, 1988, executed a Form 872-0 signed in December 1987 by Sanders as TMP on behalf of the partnership extending indefinitely the limitations period with respect to its 1984 taxable year. The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, created unified partnership proceedings to administer disputes regarding partnership items. Id. at secs. 401-407, 96 Stat. 648-671. In order to facilitate communication, administrative resolution, and, *163 if necessary, adjudication of such disputes, Congress created a statutory creature, the TMP. This contact person ensures that the Government always has one person with whom to communicate and negotiate. See H. Conf. Rept. 97-760, at 599-610 (1982), 1982-2 C.B. 600, 662-668; Transpac Drilling Venture 1982-16 v. Commissioner, T.C. Memo. 1994-26. It is undisputed that Sanders was the properly designated TMP from the inception of the partnership, until April 1987, when the partnership voted to replace Sanders with Kiss as the partnership's TMP and managing partner. A designation of a TMP remains in effect until, among other things, the TMP resigns and files a written statement as provided in section 301.6231(a)(7)-1T(i), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987). Although Sanders notified the general partners of the new TMP and managing partner designation in his April 1987 letter, it is undisputed that the IRS was not notified of Sanders' termination as TMP. Kiss therefore was never properly designated as TMP, nor was Sanders properly terminated as TMP within the procedures *164 set out in the temporary regulations. Sanders continued to receive all correspondence from the IRS, prepare the partnership's tax returns, and handle the 1984 audit, all the while holding himself out to the IRS as the TMP. The IRS did not know, and had no reason to know, of the partnership's designation of Kiss as its TMP. These facts, in and of themselves, are enough to estop petitioner from now asserting that Sanders lacked authority to sign the consent form. The statutory and regulatory provisions regarding TMP's are specifically designed to facilitate administration of partnership proceedings and to ensure fairness in treatment of all of the partners as well as the partnership. It defies common sense for a partnership to switch TMP's in the middle of an audit without notifying the IRS and then to repudiate the acts of the originally designated TMP. It is clear that Sanders had the authority to act as TMP in signing the Form 872-0. Petitioner has failed to allege a single fact that would give the IRS reason to question Sander's TMP designation. The IRS must be able to rely on the acts of a properly designated TMP and cannot be charged with knowledge of acts of which it *165 had no notice. Accordingly, the Form 872-0 executed by Sanders for 1984 is valid. Equitable Estoppel
Petitioner's second argument is that respondent is equitably estopped from assessing a deficiency against the partnership because the partnership detrimentally relied on respondent's January 1990 letter announcing a discontinuance of the audit of the partnership's 1984 taxable year. To establish a prima facie equitable estoppel case, petitioner must show: (1) A false misrepresentation or wrongful, misleading silence by respondent or her agent; (2) an absence by the taxpayer of contrary knowledge in circumstances where he may reasonably act in reliance; (3) actual reliance by the taxpayer; (4) detriment to the taxpayer; and (5) circumstances in which the absence of equitable relief would lead to an unconscionable result. Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Tonkonogy v. United States, 417 F.Supp. 78, 79 (S.D.N.Y. 1976). "The doctrine of equitable estoppel is applied against the government 'with the utmost caution and restraint.'" Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981) *166 (quoting Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977)), affd. 810 F.2d 209 (D.C. Cir. 1987). The burden of proof is on the party claiming estoppel against the Government. Rule 142(a). Petitioner maintains that the partnership had no knowledge that Sanders signed the consent in 1987 because he was in ill health and incapacitated. Sanders became ill in 1989 and was not under any disability in 1987 at the time he signed the consent. Under the principles of agency, the partnership is charged with knowledge of the acts of its partners. Notice of any matter relating to partnership affairs to any partner, who reasonably could and should have communicated it to the acting partner, operates as notice to or knowledge of the partnership. California Uniform Partnership Act, Cal. Corp. Code section 15012 (West 1991). The partnership is thus charged with knowledge of the consent's existence at the time that Sanders received and signed it. Furthermore, LaRue Sanders, with whom Kiss discussed the 1984 audit, was aware that Sanders signed the consent in December 1987. In his delegation of tax matters to the Sanders, *167 Kiss testified that he relied on both of them to convey information to him regarding the 1984 audit. Petitioner therefore cannot claim an absence of contrary knowledge in these circumstances where Kiss and the partnership constructively possessed knowledge of the fact that the consent had been executed with respect to the partnership's 1984 tax year. Petitioner also has failed to show how the partnership actually or detrimentally relied on respondent's January 1990 letter discontinuing the 1984 audit. Petitioner argues that the partnership abandoned its defense and dissolved. Petitioner did not offer any evidence establishing when the partnership dissolved or any other specific acts performed in reliance on the letter. Attached to the January 1990 letter was an examination report showing the tax respondent believed would have been due with regard to the partnership items reported on the partnership's 1984 return. Nine months later, in October 1990, the partnership received respondent's letter proposing adjustments to the partnership's 1984 year and thereby was put back on notice of a problem with its 1984 return. Petitioner's assertions lack specificity in establishing what *168 evidence irrevocably was lost during this 9 month period. Rather than lay a foundation for either the partnership's actual or detrimental reliance, petitioner asserts entitlement to what would have been a procedural windfall to the partnership based on a letter issued in error. We find that petitioner has failed to establish facts sufficient to establish at the second, third and fourth elements of equitable estoppel. Because petitioner must prove all five elements of equitable estoppel in order to succeed, respondent is not estopped from relying on the Form 872-O. Effect of Discontinuance Letter
Petitioner's third argument is that even if the Form 872-0 was valid and operated to extend the statute of limitations, such period expired May 1, 1990, 90 days after issuance of the discontinuance of audit letter. The terms of the Form 872-0 provide that the statute of limitations expires on the earlier of the 90th day after the IRS office considering the case receives a Form 872-N, or 1 year after the date upon which determinations made in an FPAA become final, or on the assessment date that reflects the final determination of tax and the final administrative appeals consideration. *169 It is undisputed that petitioner did not send a Form 872-N to terminate the consent before receiving the FPAA for the partnership's 1984 year, and that the determinations made in the FPAA have not yet become final. Petitioner apparently argues that the letter discontinuing audit was tantamount to an assessment that reflects a final determination of tax. "Assessment" as used by the IRS is a term of art and is defined in section 6203. An assessment is the process by which the amount of tax owed to the IRS is fixed and is made by recording the liability of the taxpayer in the office of the Secretary. Sec. 6203. The date of assessment is the date the summary record is signed by an assessment officer. Sec. 301.6203-1, Proced. & Admin. Regs. It is a final administrative act of the IRS before proceeding to collect the tax. The IRS letter discontinuing audit erroneously concluded that the statute of limitations had expired when in fact it had not. The letter reflects neither a final determination of tax nor an assessment of tax and, therefore, does not have the force and effect of terminating the consent. We conclude that the Form 872-0 was valid, and that the letter discontinuing *170 audit did not satisfy any of the conditions stated in the Form 872-0 causing it to terminate. An appropriate order will be issued denying petitioner's Motion for Summary Judgment.